DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Todd L. Wachter, appeals from the decision of the Summit County Domestic Relations Court. This Court reverses in part and affirms in part.
 I. {¶ 2} Appellant and Appellee, Tara L. Wachter, were married on April 30, 1999. The marriage resulted in the birth of two children, the first born on November 1, 1999, and the second on August 23, 2001. The parties separated in June of 2002, and on May 25, 2005, Appellee filed a Complaint for Divorce in the Summit County Court of Common Pleas. Appellant filed an answer to the complaint, a counterclaim, motion for temporary orders and an opposition to Appellee's motion for temporary orders on June 30, 2005. Appellee answered the counterclaim on July 8, 2005. On July 26, 2005, the court held a hearing on the temporary orders and due to Appellee's poor health, both parents were appointed as residential parents and legal custodians of the children. Appellant was appointed as the residential parent for school purposes. Prior to this hearing, the children had resided mostly with Appellee. After the hearing, Appellant had temporary custody of the children.
 {¶ 3} On February 23, 2006, the trial commenced. The parties reached stipulations on several issues, including: the incomes of the parties, $41,600 attributable to Appellant, $14,000 attributable to Appellee, a child support order of $500 a month, which was a deviation from the child support guidelines, and that Appellant would pay $2,227 in health insurance costs. The parties also agreed to a shared parenting plan, essentially dividing parenting time equally as well as declaring that both parents shall be residential parents. The parenting plan was incorporated into the divorce decree. The only contested issue at trial was who should be named as residential parent for school purposes. The trial court issued its Final Entry Decree of Divorce on March 2, 2006, ordering that Appellee shall be the residential parent for school purposes and the residential parent and legal custodian of both children. The trial court also ordered Appellant to pay a total of $709.69 per month in child support. Appellee was ordered to pay up to $100 per Court of Appeals of Ohio, Ninth Judicial District year in out-of-pocket health care costs, with anything above $100 to be allocated 60% to Appellant and 40% to Appellee. Appellant timely appealed the decree, raising four assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED BY FAILING TO INCLUDE APPELLANT'S MARGINAL, OUT-OF POCKET COSTS, NECESSARY TO PROVIDE FOR HEALTH INSURANCE FOR THE CHILDREN IN THE CHILD SUPPORT WORKSHEET ADOPTED BY THE TRIAL COURT."
 {¶ 4} In his first assignment of error, Appellant contends that the trial court erred by failing to include his marginal, out-of-pocket costs, necessary to provide for health insurance for the children in the child support worksheet adopted by the trial court. We agree.
 {¶ 5} "R.C. 3119.73 provides that, in determining the appropriate revision in the amount of child support to be paid, the court shall consider, among other factors, the cost of health insurance that the obligor, the obligee, or both have been ordered to obtain for the child." Howell v. Pennybaker, 6th Dist. No. H-01-049, 2002-Ohio-2362, at ¶ 10.
 {¶ 6} At the beginning of the trial, the parties stipulated that the amount of health insurance listed in the work sheet was $2,227. The worksheet to which the Court of Appeals of Ohio, Ninth Judicial District parties refer at trial[1] was not introduced as evidence nor was it entered into the record below. Therefore, we cannot determine exactly what this $2,227 cost represents. However, according to the shared parenting plan, which was made part of the trial court's order, Appellant was ordered to "maintain a health plan for the benefit of the minor children inclusive of major medical, surgical and hospitalization coverage through his employment. * * * The [parties] do agree that the parties shall be responsible for the `out-of-pocket' health care expenses for each child with [Appellant] paying 80% of said costs and [Appellee] 20%." Further, Appellant stated in his pre-trial statement, filed on December 5, 2005, that "[t]he children are currently covered under [Appellant's] health insurance policy."
 {¶ 7} Appellant claims that $2,227 is the annual cost to provide health insurance for the children and because this was not included in the child support computation worksheet, the trial court did not take the expense into consideration as mandated by R.C. 3119.022. Appellee argues that the trial court did take this into consideration when it ordered Appellee to pay health care costs up to $100, with costs above that to be paid 60% by Appellant and 40% by Appellee. Appellee further characterizes the $2,227 as "past out-of-pocket medical expenses paid by Appellant." As it is unclear what the $2,227 figure stipulated to in the trial court represents, we can not conclusively determine whether it should be deducted from Appellant's child support obligations.
 {¶ 8} Assuming, however, the figure represents Appellant's annual cost to provide health insurance as mandated under the shared parenting agreement, it must be included on the child support computation worksheet. We have previously held that it was in error to exclude health insurance payments for children from the child support computation worksheet. In Meecha v. Meecha (Dec. 15, 1993), 9th Dist. No. 93CA005588, we determined that former R.C. 3113.215(E), analogous to present R.C. 3119.022, provided a statutorily mandated model worksheet and directed the trial court "'to use a worksheet that is identical in content and form[.]'" Id. at *2, quoting R.C. 3113.215(E) and (F) (R.C. 3113.215 is analogous to present R.C. 3119.022). Line 20 on the present worksheet accounts for out-of-pocket costs necessary to provide health insurance. R.C. 3119.022. In Meecha we found that failure to consider annual health insurance coverage was error. Meecha, at *3.
 "If [the trial court] neglected to include these figures due to an oversight, then it violated the terms of R.C. [3119.022] which are mandatory. If the court did so intentionally, then it was required to enter the deviation from the worksheet in its journal and supply findings of facts to support its determination. As the court did not make such an entry, its child support order is erroneous." (Internal citations omitted.) Id.
 {¶ 9} In the instant case, the trial court did not enter anything on line 20 of the child support computation worksheet. Regardless of whether the $2,227 represents the amount of Appellant's annual health insurance obligation, there was a stipulation between the parties and evidence before the court that Appellant did maintain health insurance for both children. Therefore, this cost, whatever the trial court determines it to be, should be entered on line 20 of the child support computation worksheet. Further, rather than supply findings of fact to support the deviation, as required by statute, the trial court simply determined that the marginal, out of pocket costs necessary to provide for health insurance for the children were different than the amount to which the parties had previously stipulated. The trial court did not support this deviation with any findings of fact. Id. Accordingly, we sustain Appellant's first assignment of error and remand it to the trial court to determine the amount of Appellant's health care costs and to include this amount on the child support computation worksheet.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO DEVIATE FROM THE ACTUAL ANNUAL OBLIGATION OF APPELLANT LISTED IN THE CHILD SUPPORT WORKSHEET ADOPTED BY THE TRIAL COURT IN ORDER TO TAKE INTO ACCOUNT APPELLANT'S PARENTING TIME ORDERED IN THE SHARED PARENTING PLAN."
 {¶ 10} In his second assignment of error, Appellant contends that the trial court erred and abused its discretion when it failed to deviate from the actual annual obligation of the Appellant listed in the child support worksheet adopted by the trial court in order to take into account his parenting time ordered in the shared parenting plan.
 {¶ 11} When child support has been calculated pursuant to the applicable worksheet, a rebuttable presumption arises that the number is the correct amount of child support due. R.C. 3119.03. We have previously held, however,
 "that R.C. 3119.22 allows a court to order child support in an amount that deviates from the calculation obtained from the child support schedule and applicable worksheet, if after considering the factors and criteria set forth in R.C. 3119.23, it determines (1) that the amount calculated would be unjust or inappropriate and (2) that the amount would not be in the best interest of the children." Peters v. Peters, 9th Dist. Nos. 03CA008306, 03CA008307, 2004-Ohio-2517, at ¶ 36, citing Brown v. Brown, 9th Dist. No. 02CA0030, 2003-Ohio-239 at ¶ 9.
 {¶ 12} Given our resolution of Appellant's first assignment of error, the trial court must recalculate his child support obligation. As the amount of that obligation is unknown, it is not possible for this Court to determine whether the amount is "unjust or inappropriate." R.C. 3119.23. As such, "we [can] take no position at this time as to whether the trial court should order a deviation[.]" Brown at ¶ 16. In short, our resolution of Appellant's first assignment of error has effectively rendered his second assignment of error moot and we decline to address it.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED APPELLEE TO BE DESIGNATED AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE CHILDREN , WHERE THE SHARED PARENTING PLAN ADOPTED BY THE COURT STATED THAT BOTH PARENTS SHALL BE RESIDENTIAL PARENTS."
 {¶ 13} In his third assignment of error, Appellant contends that the trial court abused its discretion when it ordered Appellee to be designated as the residential and legal custodian of the children when the shared parenting plan adopted by the court stated that both parents shall be residential parents. We agree.
 {¶ 14} "The trial court is vested with broad discretion to decide matters relating to the allocation of parental rights and responsibilities for the care of minor children, and its decision is subject to reversal only upon a showing of an abuse of that discretion."Donovan v. Donovan (1996), 110 Ohio App.3d 615, 618.
 {¶ 15} The Ohio Supreme Court has noted that "in a shared parenting arrangement, neither party is a nonresidential parent. Instead, under R.C. 3109.04(K)(6), both parents are considered residential parents at all times." Pauly v. Pauly (1997), 80 Ohio St.3d 386, 388.
 {¶ 16} R.C. 3109.04(K)(6) states:
 "Unless the context clearly requires otherwise and except as otherwise provided in the order, if an order is issued by a court pursuant to this section and the order provides for shared parenting of a child, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the `residential parent,' the `residential parent and legal custodian,' or the `custodial parent' of the child."
 {¶ 17} In the trial court's entry of divorce decree, it states in its findings of facts that the sole issue that the parties could not agree on was who should be the residential parent for school purposes. The trial court's findings of facts state that Appellee should be the residential parent for school purposes. However, in its conclusions of law and order, the trial court ordered that Appellee be the "residential parent and legal custodian of [the minor children]," but made no mention of the residential parent for school purposes. In this same order, the trial court adopted the shared parenting plan that specifically states that both parties shall be a residential parent. The trial court's entry "does not clearly manifest an intent that the appellant be denied `residential parent and legal custodian' status for purposes of R.C. 3109.04(K)(6)." Beard v. Beard (Apr. 4, 1997), 11th Dist. No. 96-P-0011, at *3. Further, the trial court designated both Appellant and Appellee as the residential parent and legal custodian on the child support computation worksheet. It is unclear from the trial court's entry whether it intended to strip Appellant of his status as a residential parent and legal custodian. Rather, the entry itself conflicts with the parties' agreed upon shared parenting plan. As we cannot determine the intent of the trial court's order, Appellant's third assignment of error is sustained and the matter is remanded to the trial court for clarification of its order.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED APPELLEE TO BE DESIGNATED AS THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES."
 {¶ 18} In his fourth assignment of error, Appellant argues that the trial court erred and abused its discretion when it ordered Appellee to be designated as the residential parent for school purposes. We do not agree.
 {¶ 19} Our role in this instance is to determine if "there is relevant, competent and credible evidence upon which the fact finder, [the trial court,] could base its judgment." Brewer v. Brewer, 5th Dist. No. 2003CA00087, 2004-Ohio-3531, at ¶ 15. "We are not fact finders [.]" Id. Therefore, we will not reverse a judgment supported by some competent, credible evidence as to all the essential elements of the case. Id. Further, "the Ohio Supreme Court applied the abuse of discretion standard to custody cases in Bechtol v. Bechtol (1990),49 Ohio St.3d 21, * * * syllabus, * * *, holding: 'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.'" Brewer, supra, at ¶ 16.
 {¶ 20} In order to make a determination of the children's best interests, the trial court must look to the non-exclusive factors outlined in R.C. 3109.04(F)(1):
 "(a) The wishes of the child's parents regarding the child's care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to the child's home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of [R.C. 2919.25] involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 21} In the entry of divorce decree, the trial court stated that it considered the relevant statutory factors in naming Appellee as residential parent for school purposes. The trial court specifically found that
 "[b]oth parents agreed to shared parenting. * * * After the parties separated in 2002, the children resided primarily with [Appellee]. The temporary orders named [Appellant] the residential parent because [Appellee] had health issues related to the birth of a child, not of this marriage, in 2005. Those health problems have been resolved. * * * The children were with [Appellee] for three years prior to the temporary orders. Her health issues have been resolved and [Appellee] should be the residential parent for school purposes. * * * It is the finding of the Court that [Appellant's] acceptance of [Appellee's] role in the children's lives from June 2002, though [sic] July 2005, is persuasive evidence that she should be the residential parent for school purposes. Because the school year is nearly two-thirds over, [Appellee] shall be the residential parent for school purposes, effective July 1, 2006."
 {¶ 22} After a careful review of the record, we do not believe the trial court abused its discretion in finding the above facts. During his testimony, Appellant admitted that the children remained with Appellee for a majority of the days of the month, and that Appellee had done a fine job raising the children. During her testimony, Appellee explained that up until she was hospitalized in July of 2005, the children resided primarily with her. From June of 2002 to July of 2005, Appellant had visitation with the children on Thursday and Friday nights and every other Saturday. After July of 2005, the visitation schedule changed. Appellee would pick up the children on Sundays at 2:00 p.m., and then take them back to school by noon on Tuesday. Then she would pick them up at school that Friday and have them all weekend until the following Tuesday, when she would again drop the children off at school by noon.
 {¶ 23} Further, Appellant stated that he was sure his son could make friends wherever he was. He also admitted that it was fair to assume that the children had friends at the day care they attended while they resided with Appellee. As it appears that most of the factors enumerated in R.C. 3109.04(F)(1) equally favor both parties, the trial court's finding that the fact that the children primarily resided with Appellee up until her hospitalization and Appellant's acquiescence to this arrangement tipped the balance in favor of Appellee, is not an abuse of discretion. This fact goes to R.C. 3109.04(F)(1)(c) and (d). Further, the enumerated factors under this section are not an exhaustive list and it was in the trial court's discretion to look beyond those factors listed.
 {¶ 24} Upon review, the trial court sufficiently considered the best interest of the children as set forth in the statutory factors in designating Appellee as the residential parent for school purposes. We find there was a substantial amount of credible and competent evidence to support the trial court's designation. Accordingly, we find the trial court did not abuse its discretion, and Appellant's fourth assignment of error is overruled.
 III. {¶ 25} Appellant's first and third assignments of error are sustained. Appellant's second assignment of error is moot. Appellant's fourth assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to both parties equally.
CARLA MOORE FOR THE COURT
SLABY, P. J., BOYLE, J., CONCUR
[1] It appears the parties relied on a previously completed child computation worksheet. However, the worksheet later prepared by the trial court and attached to its decree made no mention of the $2,227. We rely on the later worksheet as prepared by the trial court and attached to its decree.